## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANN WOOD, and MICHAELENE BARKER, individually and on behalf of all others similarly situated, | Case No. 2:17-CV-03697-GJP, 2:19-cv-02194-GJP |
| Plaintiffs, | |
| v. | |
| AMERIHEALTH CARITAS SERVICES, LLC, | |
| Defendant. | |
| & | |
| BRENDA HEPP, and TARA HARDY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | |
| AMERIHEALTH CARITAS SERVICES, LLC, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
## OF CLASS AND COLLECTIVE ACTION SETTLEMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ........................................1

I.    THE PARTIES AND CLASS REPRESENTATIVES ................................1

II.   THE PARTIES ENGAGED IN CONTESTED CERTIFICATION
BRIEFING, EXTENSIVE DISCOVERY, AND TWO MEDIATION SESSIONS
BEFORE REACHING A CLASS-WIDE SETTLEMENT AGREEMENT ..............2

III.  SUMMARY OF THE SETTLEMENT TERMS ........................................3

    A.   The Parties Stipulated to Class Certification Under
         Fed. R. Civ. P. 23 for the Purposes of Settlement ..........................3
    B.   The Settlement Amount and Allocation of Funds............................4
    C.   Notice of Settlement to the Settlement Class Members
         and Release of Claims.......................................................................6
    D.   The Final Distribution of Settlement Funds
         to the Settlement Class Members ....................................................7

IV.  PRELIMINARY APPROVAL AND THE NOTICE PERIOD .................7

LEGAL ARGUMENT ..........................................................................................8

I.    THE COURT SHOULD GRANT FINAL SETTLEMENT APPROVAL .................9

    A.   A Bona Fide Dispute Exists Between the Parties.............................10
    B.   The Settlement is Fair and Reasonable............................................11

         1.  The Class Representative and Class Counsel Adequately
             Represented the Class...............................................................11
         2.  The Proposed Settlement was Negotiated at Arm's Length ...................12
         3.  The Relief Provided for the Class is Adequate...........................13
             a.  The Relief Accounts for the Costs, Risks,
                 and Delay of Trial ...........................................................13
             b.  The Method for Distributing Relief is Effective .................15
             c.  The Proposed Attorneys' Fees Award are Reasonable ................15
             d.  The Parties have Satisfied Fed. R. Civ. P. 23(e)(3) ........................16
         4.  The Proposal Treats Class Members Equitably.........................16

    C.   The Proposed Settlement Furthers the Purposes of the FLSA......................17

**II.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS** ................................................................................. 17

**<u>CONCLUSION</u>** ............................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Altenback v. Lube Center, Inc.,* 2013 WL 74251, at *2 (M.D. Pa. 2013) .....................................13

*Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746 (E.D. Pa. 2016) ...........................16

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) .................................................................................................................................12

*Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013) ...........................10

*City of Detroit v. Grinnel Corp.*, 495 F.2d 448 (2d Cir. 1974) .....................................................9

*Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464 (E.D. Pa. 2012).................................10

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010)...........................................................9

*Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483 (E.D. Pa. 2018) ............................................13, 15

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975.) ..............................................................................9

*Hall*, 2019 WL 3996621.............................................................................................................9, 10

*Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773 (E.D. Pa. 2016) ..............................10

*In re Baby Products Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)................................................8

*In re Motors Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768 (3d Cir. 1995) ......................8

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016)..................................11

*In re Right Aid Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005)............................................................15

*Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *1 (W.D. Pa. Oct. 22, 2019).........................................................................................................10

*Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516 (E.D. Pa. 2016)..................................................10

*Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982) .....................11

*McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014).......................17

*Potoski v. Wyo. Valley Health Care Sys.*, 2020 WL 207061, at *3

(M.D. PA. Jan. 14, 2020) .............................................................. 11, 13, 14

**Statutes**

Fed. R. Civ. P. 23(e).............................................................................9

Fed. R. Civ. P. 23(e)(1).........................................................................9

Fed. R. Civ. P. 23(e)(2) ........................................................................9

Fed. R. Civ. P. 23(e)(3) .......................................................................15

Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments)...................................11, 12

Fed. R. Civ. P. 23(h)(2), Advisory Committee Notes (2003 Amendment)..................................15

## INTRODUCTION

Plaintiffs Ann Wood, Michaelene Barker, Brenda Hepp, and Tara Hardy ("Plaintiffs") request final approval of the parties' agreement to resolve Plaintiffs' class and collective action claims for unpaid overtime wages arising from the Fair Labor Standards Act ("FLSA") and the wage-and-hour-laws of Pennsylvania and Iowa.[1]

As already detailed in Plaintiffs' motion for preliminary approval, the settlement is the product of arm's-length negotiations by informed counsel, assisted by a well-respected mediator. Notice has now been mailed to the Settlement Classes, without any objections to the terms of the settlement. The settlement is a fair, adequate, and reasonable resolution of the parties' bona fide dispute as to liability, damages, and class certification under the FLSA, and relevant state laws of Pennsylvania and Iowa. Accordingly, Plaintiffs respectfully request that the Court: (1) grant final settlement approval; and (2) grant Class Counsel's previously filed motion for attorney's fees, costs, and service awards.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.   THE PARTIES AND CLASS REPRESENTATIVES

Defendant is a managed care organization that operates in multiple states throughout the country. (Am. Compl. ¶¶ 16–17, ECF No. 106.) Defendant is a Pennsylvania limited liability corporation, and has an office in Philadelphia, Pennsylvania. (*Id.* ¶14.) Plaintiffs and the Settlement Class Members are current and former employees of Defendant who worked as salaried Clinical Care Reviewers and Clinical Care Reviewer Seniors (hereinafter referred to

---

[1] In conjunction with the settlement reached here, a settlement was reached in the related case, also before this Court, *Hepp v. AmeriHealth Caritas Services,* Case No. 0:19-CV-02194-GJP. The parties stipulated that the settlement there should proceed in conjunction with and pursuant to the Court's order in this case. (Order, ECF No. 117.)

collectively as "Clinical Care Reviewers"). (*See id.* ¶¶ 1–10.)

Named Plaintiff Wood has been working for Defendant as a Clinical Care Reviewer since November 2012. (*Id.* ¶ 22.) Plaintiff Wood works in Pennsylvania. (*Id.* ¶¶ 22, 40–48.) Plaintiff Wood initiated this class and collective action lawsuit on August 15, 2017, asserting claims for unpaid wages under the FLSA and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.* (Compl. ¶¶ 1–7, ECF No. 1.) Plaintiff Wood later filed the Amended Complaint to add overtime claims under the Iowa Wage Payment Collection Act ("IWPA"), Iowa Code § 91A, *et seq.*, and to add Named Plaintiff Barker. (Am. Compl. ¶¶ 1–10, ECF No. 106.) Plaintiff Barker worked for Defendant in Iowa from August 2017 to October 2017. (*Id.* ¶¶ 23, 49–57.)

## II.   THE PARTIES ENGAGED IN CONTESTED CERTIFICATION BRIEFING, EXTENSIVE DISCOVERY, AND TWO MEDIATION SESSIONS BEFORE REACHING A CLASS-WIDE SETTLEMENT AGREEMENT

Since filing this action, the parties have engaged in contested certification briefing, extensive discovery, and two mediation sessions, all before reaching a class-wide settlement agreement.

On May 15, 2018, the Court granted Conditional Collective Action Certification for the overtime claims under the FLSA and required Defendant to provide to Plaintiffs' counsel "a list of all persons working for AmeriHealth Caritas who are, or were Clinical Care Reviewers [] performing utilization reviews at any time from three years prior to the date of this Order." (ECF No. 49.) Ninety-seven (97) individuals timely signed and filed consent forms and are now Opt-in Plaintiffs. (*See Generally* Dkt.; Srey Decl. ¶ 3, ECF No. 118-2.)

The parties engaged in extensive discovery from August 2017 through July 2019, allowing both parties to evaluate the strengths and weakness of the claims and defenses at issue. (Srey Decl. ¶ 4, ECF No. 118-2.) Plaintiffs deposed Defendant's corporate 30(b)(6) witness on several issues, deposed multiple high-level managers, interviewed many of the Opt-In Plaintiffs,

and reviewed tens of thousands of pages of documents from Defendant. (*Id.*) Defendant deposed multiple Plaintiffs and served discovery on a Court-ordered sample of Opt-in Plaintiffs. (*Id.*; Order, ECF No. 100.)  Both parties have analyzed Defendant's payroll and time data to determine potential damages. (Srey Decl. ¶ 4, ECF No. 118-2.)

The parties mediated this case on two separate occasions; first on November 12, 2018 and then again on September 27, 2019. (*Id.* ¶ 5.)  Both mediations were conducted by Michael E. Dickstein, a respected mediator well versed in wage and hour matters. (*Id.*) The parties informally exchanged information in preparation for each mediation, including pay and time records for the putative classes. (*Id.*) After extensive negotiations, the parties executed a Memorandum of Understanding at the September 27th mediation session. (*Id.*; *see also* ECF No. 115.)  The parties finalized the Settlement Agreement on November 11, 2019, which was previously filed with this Court as as Exhibit A. (Srey Decl. ¶ 5, ECF No. 118-2.)

## III.   SUMMARY OF THE SETTLEMENT TERMS

### A.   <u>The Parties Stipulate to Class Certification Under Fed. R. Civ. P. 23 for the Purposes of Settlement</u>

As the Settlement Agreement details, the parties intend to resolve the claims of all eligible members of the FLSA Collective (i.e., all Opt-in Plaintiffs), all members of the asserted Rule 23 classes in Pennsylvania and Iowa, and the claims of the five Clinical Care Reviewers who are part of the related case before this Court, *Hepp v. AmeriHealth Caritas Services, LLC*, Case No. 0:19-CV-02194-GJP (the "*Hepp v. AmeriHealth* case"). (Settlement Agreement ¶ 18, ECF No. 118-3.). The Settlement covers 93 Opt-in Plaintiffs,[2] the 5 individuals who filed

---

[2] During the course of the litigation, Defendant identified four (4) individuals who opted in but did not work as Clinical Care Reviewers during the relevant time periods. (Srey Decl. ¶ 6, ECF No. 118-2.)  These individuals are Fairuz Manion, Latasha Smith-Tutt, Nadia Tran, and Maurice Williams. (*See* ECF Nos. 10, 18, 33, & 62.)  The parties agree to dismiss these four individuals'

consent forms in the *Hepp v. AmeriHealth* case, the 247 members of the Rule 23 State Law

Settlement Classes (the "Settlement Class Members"), and two individuals who contacted the

Settlement Administrator and who the parties agreed could participate in the settlement, for a

total of 347. (*Id.* ¶¶ 18, 24; Srey Decl. ¶ 4.)  For purposes of the Settlement only, the parties have

further stipulated to certification of the Pennsylvania and Iowa classes. (Settlement Agreement ¶

24, ECF No. 118-3.)

   **B.**  **The Settlement Amount and Allocation of Funds**

   The Settlement Agreement resolves the Settlement Class Members' claims for a total of

$4,250,000.00 ("Gross Settlement Amount"). (*Id.* ¶ 17.) The sum of the Gross Settlement

Amount remaining after subtracting: (a) Class Counsel's attorneys' fees and costs; (b) service

payments for Plaintiffs; (c) the contingency fund; and (d) costs incurred in payment to the

Settlement Administrator, constitutes the "Net Allocation Fund." (*Id.* ¶ 19.)  The Net Allocation

Fund will be allocated to "Participating Class Members." (*Id.* ¶ 20.)

   Based on this, the total funds available for allocation to Participating Class Members will

be no less than $2,752,905.80. (Srey Decl. ¶ 4.)[3] To calculate each Settlement Class Member's

*pro-rata* settlement allocation, Plaintiffs' Counsel performed a detailed and comprehensive

damages analysis. (*Id.*) For Each Settlement Class Member, the analysis considered: (1) the

number of eligible weeks for the Settlement Class Member worked as a Clinical Care Reviewer

during the applicable statutory period(s); (2) annual base salary data; (3) an assumed average of

---

claims without prejudice as part of this Motion. (Srey Decl. ¶ 6, ECF No. 118-2; Settlement
Agreement ¶ 3, ECF No. 118-3.)

[3] The Net Allocation fund has increased slightly since Class Counsel's initial calculation for the
following two reasons: 1) the actual costs incurred are less than what was originally estimated in
the Settlement Agreement; and 2) because pursuant to the Settlement Agreement, unused monies
($9,857.05) in the contingency fund have been reallocated pro rata to the Settlement Class
Members. (Srey Decl. ¶ 4.)

48 hours of work per week; and (4) the available remedies for each Settlement Class Member under the FLSA and/or relevant state law remedies. (*Id*.) From this analysis, Plaintiffs' counsel calculated an individual *pro rata* percentage for each Settlement Class Member, and then applied that percentage to the Net Allocation Fund to determine each Settlement Class Member's individual settlement offer. (*Id*.)

As noted above, the Net Allocation Fund is determined by deducting the following items from the Gross Settlement Amount. First, the Settlement Agreement allows Plaintiffs' Counsel to request an award of attorneys' fees in an amount up to $1,416,666.66 (one-third of the Gross Settlement Amount). (Settlement Agreement ¶ 29, ECF No. 118-3.) Pursuant to the Settlement Agreement, Plaintiffs' Counsel can also seek reimbursement of their litigation costs of up to $65,000.00. (*Id.* ¶ 30.) If the Court approves fees or costs in an amount less than requested, the remaining amounts will be reallocated in the final settlement allocations on a *pro rata* basis.

Second, the Settlement Agreement provides for service payments to the Named Plaintiffs, including the Named Plaintiffs in the *Hepp v. AmeriHealth* case, and to Plaintiffs who participated significantly in discovery, in recognition of their time spent on this case leading up to the proposed settlement. (*Id.* ¶ 35–36.)

Third, the parties have agreed to a contingency fund of up to $20,000.00, the purpose of which is allow the parties to effectuate the settlement, including to correct any errors relating to the allocations and to make payments to individuals who were not included as Settlement Class Members but have a good faith claim for participation. (*Id.* ¶ 33.) The unused portion of the fund will be reallocated in the final settlement allocations on a *pro rata* basis. (*Id.* ¶ 34.)

Finally, $18,526.00 will be set aside to pay for the expenses incurred to pay the Settlement Administrator, JND Legal Administration.[4] (*Id.* ¶ 32; Srey Decl. ¶ 5.) Any unused portion of the fund will be reallocated in the final settlement allocations on a *pro rata* basis.

C.      **Notice of Settlement to the Settlement Class Members and Release of Claims**

The parties agreed to a notice process under which two settlement notices were provided: one for distribution to the FLSA opt-in Plaintiffs in this case and the *Hepp* Plaintiffs (the "FLSA Notice"), and a second for distribution to members of the Rule 23 State Law Settlement Classes (the "Rule 23 Notice"). (*See* Settlement Agreement ¶¶ 39–41, ECF No. 118-3; ECF Nos. 118-4, 118-5.) As set forth in more detail below, these notices were distributed following preliminary approval.

In exchange for the monetary relief provided, Participating Settlement Class Members who cash their check release Defendant and its past and present parents, subsidiaries, affiliates and joint ventures, and each of their directors, officers, employees, lawyers, and each of their successors and assigns ("Releasees"), of all known and unknown claims for overtime compensation, straight time, minimum wages, liquidated damages, penalties and interest and fees/costs under the FLSA and all state/local laws and regulations and common law theories of the states where the Participating Class Member worked, including the Pennsylvania Wage Payment and Collection Law, arising from the Participating Settlement Class Member's employment with Defendant as a Clinical Care Reviewer (including Clinical Care Reviewer Seniors) up to the earlier of December 1, 2019, or the date of preliminary approval. (Settlement Agreement ¶ 27, ECF No. 118-3.)  For Participating Class Members who do not cash their

---

[4] The $14,750.00 set aside for the Settlement Administrator identified in the Preliminary Approval Motion increased by $3,776.00 as a result of unanticipated costs during the Notice Period. (Srey Dec. ¶ 5.)

check: (a) FLSA Opt-in Plaintiffs will be bound by the full release, and (b) Rule 23 State Law Class Members will be bound by the state law release only.  The notice and the back of the checks for the Rule 23 State Law Class Members will confirm that they are opting into the case and also releasing their FLSA claims by negotiating the check. (*Id.* ¶ 28.)

### D. The Final Distribution of Settlement Funds to the Settlement Class Members

If the settlement is finally approved, Defendant will deposit the Gross Settlement Amount with the Settlement Administrator within thirty-one (31) days of the Settlement Effective Date. (*Id*. ¶ 50.)  The Settlement Administrator will then mail each Participating Class Member a settlement check. (*Id.* ¶ 52.) One half of the payment will be reported as wages for tax purposes, with each Participating Settlement Class Member receiving an IRS Form W-2. (*Id.* ¶ 53.) One half of the payment will constitute payment for liquidated damages and will be reported on an IRS Form 1099. (*Id.*) All amounts allocated as service payments will be reported on an IRS Form 1099 as well. (*Id.*)

Participating Settlement Class Members will have 90 days from the date of issuance of their settlement checks to deposit or cash them. (*Id.* ¶ 55.) Checks that have not been deposited or cashed within this period will be void, and will be added to a *cy pres* fund to be donated to charity. (*Id*. ¶ 56.)

## IV. PRELIMINARY APPROVAL AND THE NOTICE PERIOD

The Court granted Plaintiffs' motion for preliminary settlement approval on December 13, 2019 and certified the Rule 23 classes for settlement purposes. (ECF No. 119.) Notice was subsequently issued to the Settlement Class Members by both email and U.S. Mail by JND Legal Administration (the "Settlement Administrator"). (ECF 119; Srey Decl. ¶ 6.) In addition to notice by email and U.S. Mail, the Settlement Administrator also set up a toll-free phone number

to answer questions related to the settlement. (*Id.*) The deadline to opt-out or object to the settlement was March 7, 2020. (*Id.*)

The method of providing notice was effective in reaching the members of the Settlement Classes. During the notice period, Class Counsel's office responded to calls, received and recorded address updates from Settlement Class Members, and fielded basic question about the settlement. (Srey Decl. ¶ 7.) Class Counsel was available to respond to more involved questions about settlement allocations and advice on legal matters. (*Id.*) The Settlement Administrator ensured that any returned notices were re-mailed as needed, and also was available to collect any objections and exclusions. (*Id.* ¶ 7, Ex. C.)[5] The settlement received no objections or exclusions (*Id.* ¶ 7.).

## **LEGAL ARGUMENT**

Federal Courts favor the voluntary resolution of litigation through settlement, particularly in the class action context. *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173 n.8 (3d Cir. 2013). The Third Circuit has held that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding formal litigation." *In re Motors Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). For the reasons set forth below, the Court should: (1) grant final settlement approval; and (2) grant Plaintiffs' previously filed motion for attorneys' fees, costs, and service awards.

---

[5] During the settlement notice period, two additional individuals contacted the Settlement Administrator inquiring about their eligibility to participate in the Settlement. The parties agreed to include these two individuals as part of the settlement, including the distribution of *pro rata* settlement amounts from the contingency fund and releases of their claims pursuant to the Settlement Agreement. (Srey Decl. ¶ 7.)

## I.      THE COURT SHOULD GRANT FINAL SETTLEMENT APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any

settlement that will bind absent class members.  "In evaluating a class action settlement under

Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable,

and adequate." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) (citing Fed. R.

Civ. P. 23(e))). This involves a two-step process.  After the preliminary approval stage, and after

class members have had an opportunity to opt-out or object, the Court then holds a hearing and

makes a final determination regarding whether the settlement is "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2).

Under the recent amendments to Federal Rule of Civil Procedure 23(e), courts look to

several factors when determining whether to grant final approval of a class action settlement.

*Hall*, 2019 WL 3996621, at *2 (quoting Fed. R. Civ. P. 23(e)(1)).  Specifically, these are

whether:

> (A) the class representatives and class counsel have adequately represented the
> class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the
>> class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing
>> of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

*Id*. (quoting Fed. R. Civ. P. 23(e)(2)).  In the Third Circuit, courts also have traditionally

looked to "the *Girsh* factors" in deciding whether a class-action settlement is fair and

reasonable. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975.)[6] These factors "predate the recent revisions," and "*Girsh* substantially overlaps with the factors identified in Rule 23." *Hall*, 2019 WL 3996621, at *2 n.1.

Courts apply similar criteria when considering whether to approve collective action settlements under the FLSA. Courts evaluate whether the settlement "'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions[.]'" *Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *1 (W.D. Pa. Oct. 22, 2019) (quoting *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012). Where there is a bona fide dispute, courts conduct "a two-part fairness inquiry." *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016). First, courts look to whether the settlement is "fair and reasonable." *Id.*  When making this determination, courts rely "on the factors set out by the Third circuit for approving class action settlements pursuant to Federal Rule of Civil Procedure 23." *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013).  Second, courts look to whether the settlement "furthers the FLSA's implementation in the workplace." *Howard*, 197 F. Supp. 3d at 777.

### A.    A Bona Fide Dispute Exists Between the Parties

A settlement resolves a bona fide dispute when it falls "within the contours of the FLSA

---

[6] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157 (alterations omitted) (quoting *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

and there [is] evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016). Here, Plaintiffs allege that Defendant misclassified them, and others similarly situated, as exempt from overtime payment, and therefore wrongfully denied them overtime compensation on that basis. Defendant specifically denies that Plaintiffs are owed any wages under the FLSA or state laws, and has consistently asserted that Plaintiffs are not entitled to overtime regardless of the number of hours worked. *See Potoski v. Wyo. Valley Health Care Sys.*, 2020 WL 207061, at \*3 (M.D. PA. Jan. 14, 2020) (dispute was bona fide on this basis). Although the parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expenses associated with continued litigation, the parties agree that a compromise is appropriate. *See Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

**B.   The Settlement is Fair and Reasonable**

Pursuant to the factors set forth in Fed. R. Civ. P. 23(e), the Settlement is fair, reasonable, and adequate and final approval should be granted.

**1.   The Class Representatives and Class Counsel Adequately Represented the Class**

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop enough information about the case to appreciate sufficiently the value of the claims"). Plaintiffs' Counsel exhausted considerable time and effort on this case, including: (1) logging over 2,100

11

hours on this litigation; (2) taking and defending depositions; (3) requesting and reviewing written and electronic discovery, including voluminous email productions; (4) constructing damages models, and interviewing dozens of class members regarding their individual work experiences as Clinical Care Reviewers. (*See* Srey Decl. ¶ 12, ECF No. 118-2.)  Plaintiffs' Counsel's efforts have been adequate.

The Class Representatives' representation of the State Law Classes is likewise adequate. The Class Representatives have demonstrated a commitment to the class by assisting with the preparation of the Complaints, executing declarations, completing written discovery, and/or sitting for a deposition. (Srey Decl. ¶ 10, ECF No. 118-2.)  They have maintained regular contact with Plaintiffs' Counsel and have been and remain committed to representing the class. (*Id.*)

**2.      The Proposed Settlement Was Negotiated at Arm's Length**

The proposed settlement was the product of extensive, arm's length negotiations, with experienced and informed counsel on both sides. Plaintiffs' Counsel is experienced in wage and hour and class action matters and has reasonably assessed the risks of continued litigation and benefits of settlement.  Defendant's Counsel is part of an international law firm likewise experienced in wage-and-hour class and complex litigation. The parties engaged in two mediation sessions with a well-respected wage and hour mediator in an effort to resolve their dispute. This raises a presumption of prudence. *See Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) ("[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.")

12

### 3.   The Relief Provided for the Class is Adequate

#### a.   The Relief Accounts for the Costs, Risks, and Delay of Trial

This factor balances the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments). This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id*. The relief provided by the proposed settlement is reasonable, and in fact substantial, considering the costs and risks of continued litigation.  The merits of the litigation were hotly contested by both sides. Defendant contested conditional certification of the FLSA Collective, (ECF No. 32), and undoubtedly would have opposed Plaintiffs' motion for Rule 23 certification of the State Law Classes.  The parties would almost certainly also have filed competing briefs for summary judgment, and Defendant would have filed a motion to decertify the FLSA Collective, all costly endeavors and all prior to trial. *See Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 494–95 (E.D. Pa. 2018) ("[T]he practical and legal risks of decertification [favors] settlement[.]"). Continuing the litigation, thus, would have resulted in complex, costly, and lengthy proceedings before this Court, and possibly also before the Third Circuit, in the event of any appeals. These proceedings would have significantly delayed any relief to Settlement Class Members and might have resulted in no relief at all.

Additionally, the parties engaged in extensive discovery, allowing them to evaluate the strengths and weaknesses of their respective positions. *See Potoski*, 2020 WL 207061, at *4 (where parties "conducted extensive discovery" and counsel thereby demonstrated "appreciation of the merits and risks of proceeding to trial" settlement was fair) (quoting *Altenback v. Lube Center, Inc.,* 2013 WL 74251, at *2 (M.D. Pa. 2013)). Plaintiffs deposed a corporate 30(b)(6)

witness, several high-level managers, interviewed dozens of the class members, and obtained and reviewed tens of thousands of pages of documents from Defendant. (Srey Decl. ¶ 4, ECF No. 118-2.) Defendant deposed multiple Plaintiffs and served discovery on the court-ordered sample of Opt-in Plaintiffs, along with Named Plaintiffs Wood and Barker. (*Id.*) Both parties analyzed payroll and time data to determine potential damages. (*Id.*) When the parties requested the Court stay the case in order to engage in a second mediation, fact discovery was nearly closed. (*See* ECF Nos. 112 & 114.)

During discovery, Defendant produced information claiming that it relied on attorney advice when it classified Clinical Care Reviewers as exempt, which relates to the issues of whether Defendant's classification of Clinical Care Reviewers was willful and whether it acted in good faith. (Srey Decl. ¶ 4, ECF No. 118-2.) Plaintiffs deposed the attorney whose advice Defendant claimed to rely on.  (Srey Decl. ¶ 8.)  Defendant, for mediation purposes, also produced records of computer login data that it alleges showed Plaintiffs worked less overtime hours than they claimed. (Srey Decl. *Id.* ¶ 5, ECF No. 118-3.)

While Plaintiffs vigorously contested and were fully prepared to litigate these issues, this settlement takes into account the risks associated with these various components of Plaintiffs' damages. Before fees and costs, the proposed settlement will provide class members with an average settlement amount of $12,248.84, or $131.47 per eligible workweek. (Srey Decl. ¶ 9.) Given the probability of success and the risks of moving forward with litigation, the settlement is fair and appropriate. *See Potoski*, 2020 WL 207061, at *4, (litigation risks including statute of limitations issues regarding FLSA willfulness and issues regarding amount of overtime hours actually worked justified granting final approval).

14

**b.      The Method for Distributing Relief is Effective**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (2018 Amendments).  After this Court's approval, (ECF No. 119), the Settlement Administrator mailed and emailed *individualized* notices to each Settlement Class Member on January 7, 2020.  (*See* Srey Decl. ¶ 3, ECF No. 121-2).  The notices did *not* require any additional action from Settlement Class Members in order to receive a check with their individualized settlement allocation. (*See*; ECF Nos. 118-4, 118–5.) Thus, unless a Settlement Class Member explicitly requested to be excluded, they will be mailed a check. (*Id.*) The notices for individuals with Rule 23 claims, moreover, allowed for Settlement Class Members to raise objections to the settlement if they so choose. (*Id.*)  The deadline to raise any objections was March 7, 2020. (Srey Decl. ¶ 3, ECF No. 121-2.) The settlement received no objections or exclusions. *Galt*, 310 F. Supp. 3d at 494 (that "no potential class members have objected to, or sought exclusion from, the proposed settlement [] strongly supports the approval of the settlement").

**c.      The Proposed Attorneys' Fees Award are Reasonable**

Pursuant to the Court's Order, (ECF No. 119), Plaintiffs filed a motion for attorneys' fees and costs on February 3, 2020. (*See* ECF No. 121.)  Plaintiffs filed the motion more than 30 days before the expiration of the opt-out and objection period of March 7, 2020. *See* Fed. R. Civ. P. 23(h)(2), Advisory Committee Notes (2003 Amendment) ("[T]he court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion.") Plaintiffs' Counsel requested an award of attorneys' fees of not more than $1,416,666.66 (one-third of the amount recovered), and costs of up to $61,901.53. (ECF No. 121.) The notices of

15

settlement fully informed Settlement Class Members of Plaintiffs' Counsels request for attorneys' fees and costs, and the amounts requested. (Srey Decl. ¶ 3, ECF No. 121-2.) There were no objections to the requested award of attorney's fees and costs. *See Galt*, 310 F. Supp. 3d at 497 (the absence of objections supports finding that requested fees are reasonable) (citing *In re Right Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)).

### d. The Parties have Satisfied Fed. R. Civ. P. 23(e)(3)

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement is the only agreement connected to this settlement. (*See* ECF No. 118-3.) Plaintiffs have satisfied this requirement.

### 4. The Proposal Treats Class Members Equitably

This factor seeks to prevent the "inequitable treatment of some class members *vis-à-vis* others." Fed. R. Civ. P. Advisory Committee Notes (2018 Amendments). The settlement allocation treats Settlement Class Members equitably relative to each other. In negotiating and allocating the settlement amount, Plaintiffs' Counsel performed a detailed and comprehensive damages analysis. (Srey Decl. ¶ 7, ECF No. 118-2.) For each Settlement Class Member, the analysis considered the same factors: (1) the number of eligible weeks for the Settlement Class Member worked as a Clinical Care Reviewer during the applicable statutory period(s); (2) annual base salary data; (3) an assumed average of 48 hours worked per week; and (4) the available remedies for each Settlement Class Member under the FLSA and/or relevant state law remedies. (*Id.*) From this analysis, Plaintiffs' counsel, applying the same methodology, calculated an individual *pro rata* percentage for each Settlement Class Member, and then applied that percentage to the Net Allocation Fund to determine each Settlement Class Member's individual settlement offer. (*Id.*) Plaintiffs have satisfied this requirement.

C.     **The Proposed Settlement Furthers the Purposes of the FLSA**

The proposed settlement contains no indicia of an agreement that would frustrate the implementation of the FLSA in the workplace. As set forth above, the scope of the release for the FLSA collective is appropriately limited to wage and hour claims that were or could have been asserted against Defendant through December 1, 2019. *See, e.g.*, *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 764 (E.D. Pa. 2016) ("Also the Settlement does not contain impermissibly broad release provisions, which avoids yet another common pitfall."). Likewise, although Plaintiffs and Class Counsel agree not to affirmatively publicize the settlement, (Settlement Agreement ¶ 63, ECF No. 118-3), this type of limited confidentiality provision does not frustrate the purposes of the FLSA. The settlement remains publicly available and the plaintiffs remain "free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media." *McGee v. Ann's Choice, Inc.*, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014).

II.     **THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Pursuant to the Court's Order granting preliminary settlement approval, (ECF No. 119), and the parties' Settlement Agreement (ECF No. 118-3 ¶¶ 29–30, 35–36), on February 3, 2020, Class Counsel filed a motion seeking an award of reasonable attorneys' fees and costs, as well as reasonable service awards to the Named Plaintiffs and the Plaintiffs who engaged in discovery. As set forth in that motion, these requests are reasonable and within the range commonly approved by the Third Circuit. They should be granted in full. (*See* ECF No. 121.)

## CONCLUSION

For the reasons set forth herein, Plaintiffs request that their Unopposed Motion for Final Settlement Approval be granted in full.

17

Respectfully submitted,

Dated: March 16, 2020

**NICHOLS KASTER, PLLP**

/s/*Rachhana T. Srey*
Rachhana T. Srey, MN Bar No. 340133*
Neil D. Pederson, MN Bar No. 0397628*
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 338-4878
srey@nka.com
npederson@nka.com

*Admitted Pro Hac Vice*

**SCHALL & BARASCH, LLC**
Patricia Barasch, PA Bar No. 70073
Moorestown Office Center
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
Telephone: (856) 914-9200
Fax: (856) 914-8420
pbarasch@shallandbarasch.com

ATTORNEYS FOR PLAINTIFFS, THE FLSA COLLECTIVE CLASS, AND THE RULE 23 SETTLEMENT CLASSES

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2020, a copy of the above was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court electronic filing system.  Parties may access this filing through the Court's ECF system.


Dated: March 16, 2020                                           s/ *Rachhana T. Srey*
                                                                            Rachhana T. Srey