## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANN WOOD and MICHAELENE BARKER, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br> v. <br> AMERIHEALTH CARITAS SERVICES, LLC, <br><br> *Defendant* | CIVIL ACTION <br> NO. 17-3697 |
| BRENDA HEPP and TARA HARDY, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br> v. <br><br> AMERIHEALTH CARITAS SERVICES, LLC, <br><br> *Defendant.* | CIVIL ACTION <br> NO. 19-2194 |

**PAPPERT, J.**                                                        **April 7, 2020**

### MEMORANDUM

The Court previously granted Plaintiffs' Unopposed Motion for Preliminary

Settlement Approval in this litigation involving claims for unpaid overtime wages

under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.; the Pennsylvania

Minimum Wage Act ("PWMA"), 43 P.S. § 333.101; and the Iowa Wage Payment

Collective Act ("IWPA"), Iowa Code § 91S, et seq. (ECF No. 119[1]) They now seek final

---

[1]      Unless otherwise noted, references are to documents filed in *Wood v. Amerihealth Caritas Services, LLC.* (E.D. Pa. Civ. A. No. 17-3697).

approval of a $4,250,000 gross settlement on behalf of a FLSA collective and Rule 23 state law classes (ECF No. 122), an award of reasonable attorneys' fees and costs incurred in securing the settlement award and service awards for Named Plaintiffs and certain FLSA Opt-In Plaintiffs who were deposed and/or who responded to written discovery. (ECF No. 121.) Plaintiffs' motions are unopposed and there have been no requests for exclusion or objections to the proposed settlement. After reviewing the parties' submissions, including the Settlement Agreement, and holding a telephonic final approval hearing[2] on April 2, 2020 (ECF No. 126), the Court grants Plaintiffs' motions.

I

Defendant is a managed care organization operating in multiple states. (*Wood* Am. Compl. ¶¶ 16–17, ECF No. 106.) Plaintiffs and the similarly situated individuals they represent are current and former Clinical Care Reviewers and Clinical Care Reviewer Senior for Defendant. (*See id.* ¶¶ 1-10.) Named Plaintiff Ann Wood has been a Clinical Care Reviewer for Defendant in Pennsylvania since November 2012. (*Id.* ¶ 22.) Named Plaintiff Michaelene Barker worked for Defendant as a Clinical Care

---

[2]     The Settlement Administrator distributed FLSA Notices and Rule 23 Notices that informed Participating Settlement Class Members that the final approval hearing would take place on April 2, 2020 "before Judge Gerald J. Pappert at James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106." (*See* ECF Nos. 118-4 and 118-5.) On March 18, 2020, the Chief Judge of the Eastern District of Pennsylvania Juan R. Sánchez entered a Standing Order recognizing the recommendation that people not gather in groups of more than 10 people due to the COVID-19 pandemic. After a March 27, 2020 telephone conference with counsel for the parties (ECF No. 124), the Court determined that to protect the health and safety of the public, staff, and judicial officers from exposure to or spread of COVID-19, the final approval hearing would take place via an on the record telephone conference with no proceedings conducted in the James A. Byrne U.S. Courthouse. Notice of the call-in number for the telephonic proceeding was placed on the public docket on March 31, 2020. (ECF No. 125.) No one dialed in to the final approval hearing to object on behalf of the class.

Reviewer in Iowa from August 2017 to October 2017. (*Id.* ¶¶ 23, 49-57.) On November

12, 2019, the Court consolidated for settlement purposes Wood and Barker's action with

a related action filed by Brenda Hepp and Tara Hardy. (*Hepp v. Amerihealth Caritas

Services, LLC* (E.D. Pa. Civ. A. No. 19-2194; *see also* Civ. A. No. 17-3697, ECF No 117.)

Defendant employed Hepp as a Clinical Care Reviewer in Pennsylvania from

approximately April 2018 to April 2019 and Hardy as a Clinical Care Reviewer in

Pennsylvania from approximately April 2014 to the end of December 2016. (*Hepp*

Compl., Civ. A. No. 19-2194, ECF No. 1, ¶¶ 17, 19.)

Plaintiffs in both cases allege that Defendant unlawfully classified them and

other similarly situated employees as exempt from overtime laws when their "primary

job duty was non-exempt work consisting of reviewing medical authorization requests

submitted by healthcare providers against pre-determined guidelines and criteria for

coverage and payment purposes." (*Wood* Am. Compl. ¶ 25; *Hepp* Compl. ¶ 23.) As a

result, Plaintiffs "were paid a salary with no overtime pay" (*Wood* Am. Compl. ¶ 26;

*Hepp* Compl. ¶ 24) even though they were required "to work long hours, including

overtime hours, to complete all of their job responsibilities and meet Defendant's

productivity standards." (*Wood* Am. Compl. ¶ 30; *Hepp* Compl. ¶ 29.) They seek

unpaid back wages at the applicable overtime rates. (*See Wood* Am. Compl. and *Hepp*

Compl.)

On May 15, 2018, when Wood was still the only Named Plaintiff, the Court

granted Conditional Collective Action Certification for her FLSA overtime claims and

required Defendant to provide her counsel with "a list of all persons working for

AmeriHealth Caritas who are, or were Clinical Care Reviewers [ ] performing

utilization reviews at any time from three years prior to" May 15, 2018.  (ECF No. 49.)

Ninety-seven individuals timely signed and filed consent forms and are now FLSA Opt-

In Plaintiffs.  (Srey Prelim. Approval Decl., ECF No. 118-2, ¶ 3.)

The parties engaged in discovery between August 2017 and July 2019.  (*See id.*

¶ 4.)  Plaintiffs reviewed many of Defendant's documents, deposed Defendant's Rule

30(b)(6) designee on several issues, deposed high-level managers, interviewed a number

of FLSA Opt-In Plaintiffs, and reviewed Defendant's written discovery.  (*Id.*)

Defendant deposed multiple Plaintiffs and served discovery on a Court-ordered sample

of FLSA Opt-In Plaintiffs.  (*Id.*; *see also* ECF No. 100.)  Both parties analyzed

Defendant's payroll and time data to determine potential damages.  (Srey Prelim.

Approval Decl. ¶ 4.)

After two rounds of private mediation, first on November 12, 2018 and then on

September 27, 2019, the parties executed a Memorandum of Understanding.  (*Id.*)

They finalized a Settlement Agreement on November 11, 2019.  (*Id.* ¶ 5.)  The non-

reversionary Settlement resolves Plaintiffs' asserted claims for $4,250,000, less

attorneys' fees and costs, service payments for Plaintiffs, a contingency fund and costs

incurred in payment to the Settlement Administrator.  (*Id.* ¶¶ 17, 19.)  It resolves the

claims of all eligible members of the FLSA-Collective (93 "FLSA Opt-In Plaintiffs"[3]), all

members of the asserted Rule 23 classes in Pennsylvania and Iowa (247 total "Rule 23

Settlement Class Members"[4]), and the claims of five Clinical Care reviewers who are

---

[3]     Defendant identified four individuals who opted in, but who did not work as Clinical Care Reviewers during the relevant time periods:  Fairuz Manion, Latasha Smith-Tutt, Nadia Tran and Maurice Williams.  (Srey Decl. ¶ 6; *see also* ECF Nos.  10, 18, 33 & 62.)  The parties have agreed to dismiss their claims without prejudice.  (Srey Decl. ¶ 6; Settlement Agreement ¶ 3.)

[4]     Specifically, the Rule 23 Settlement Class is comprised of both the

part of the *Hepp v. AmeriHealth* case.  (Settlement Agreement, ECF No. 118-3, ¶ 18.)
In addition, the parties have agreed to resolve the claims of two additional individuals
who contacted the Settlement Administrator.  (Pls.' Mem., ECF No. 122-1, at 4.)  In
total, the Settlement Agreement resolves 347 individuals' claims.  (*Id.*; *see also* ECF No.
122-4.)  The Court collectively refers to the FLSA Opt-In Plaintiffs, the Rule 23
Settlement Class Members, and the two additional individuals as the "Participating
Settlement Class Members."

The $4,250,000 Gross Settlement Amount less (1) Class Counsel's attorneys' fees
and costs; (2) service payments for Plaintiffs; (3) a contingency fund; and (4) the cost of
the Settlement Administrator yields a Net Allocation Fund of no less than
$2,752,905.80 for distribution to Participating Settlement Class Members.  (Pls.' Mem.
at 4; *see also* Srey Final Approval Decl., ECF No. 122-2, ¶ 4.)  Plaintiffs' Counsel
assigned a *pro rata* allocation percentage to each Participating Settlement Class
Member considering:  (1) the number of eligible weeks worked as a Clinical Care
Reviewer during applicable statutory periods; (2) annual base salary data; (3) an
assumed average of 48 hours of work per week; and (4) available remedies under the
FLSA and/or relevant state law remedies.  (Pls.' Mem. at 4-5.)  Each Participating

---

*Pennsylvania Settlement Class*: All persons who worked as Clinical Care Reviewers
(Clinical Care Reviewer UM or Clinical Care Reviewer Sr UM) for AmeriHealth
Caritas in Pennsylvania at any time from August 15, 2014 to the earlier of December
1, 2019 or the date of preliminary approval and who are not already FLSA Opt-in
Plaintiffs; and the

*Iowa Settlement Class*: All persons who worked as Clinical Care Reviewers (Clinical
Care Reviewer UM or Clinical Care Reviewer Sr UM) for AmeriHealth Caritas in Iowa
at any time from August 15, 2015 to the earlier of December 1, 2019 or the date of
preliminary approval and who are not already FLSA Opt-in Plaintiffs.

Settlement Class Member's individual settlement offer was derived by applying their individual *pro rata* percentage to the Net Allocation Fund. (*Id.* at 5.) Before fees and costs, the Settlement provides Participating Settlement Class Members with an average settlement distribution of $12,248.84, or $131.47 per eligible workweek. (Srey Final Approval Decl. ¶ 9; *see also* ECF No. 122-4 (listing Participating Settlement Class Members and their allocation amounts.)

The Settlement Agreement provides for service payments to the Named Plaintiffs, including the *Hepp v. Amerihealth* Named Plaintiffs, and, in recognition of time spent on the case leading up to the Settlement, to certain other Participating Class Members who participated significantly in discovery. (Settlement Agreement ¶¶ 35-36.) Specifically, Plaintiffs seek a $5,000 service payment to the original Named Plaintiff, Ann Wood. She has been actively involved in the litigation since it began, participated in numerous discussions regarding her claims, worked with Class Counsel to prepare a declaration in support of Plaintiffs' motion for conditional certification of the FLSA collective and agreed to serve as a class representative for the Pennsylvania Rule 23 class. Wood also sat for a deposition, responded to written discovery and was interviewed as part of the construction of damage models. (Srey Prelim. Approval Decl. ¶ 14.) In addition, Plaintiffs seek $500 service payments for Michaeline Barker and each of the FLSA Opt-In Plaintiffs who were deposed. (Settlement Agreement ¶ 35.) They also request $300 payments for Named Plaintiffs Brenda Hepp and Tara Hardy and for the other FLSA Opt-In Plaintiffs who participated in written discovery but who were not deposed. (*Id.*) Each participated in the litigation by producing and reviewing documents, reviewing pleadings, providing declarations in support of motions,

participating in depositions, responding to written discovery requests and/or reviewing proposed settlement terms.  (*Id.* ¶¶ 13, 15-18.)

The Settlement Agreement allows Class Counsel to seek reimbursement of their litigation costs, in an amount not to exceed $65,000.00 to be paid out of the Gross Settlement Amount.  (*Id.* at ¶ 30.)  It also provides for a contingency fund of up to $20,000 that will allow the parties to effectuate the Settlement.  The contingency fund will cover any errors relating to the allocations and will cover payments to individuals who were not specifically included under the Settlement Agreement's terms but who have a good faith claim for participation.  (*Id.* ¶ 33.)  Any unused portion of the contingency fund will be reallocated on a *pro rata* basis in the final allocations to Participating Settlement Class Members.  (*Id.* ¶ 34.)  Also, $18,526 has been set aside to pay expenses incurred by the Settlement Administrator, JND Legal Administration.  (Pls'. Mem. at 6.)  Unused funds will be reallocated on a *pro rata* basis in the final allocations.

In exchange for monetary relief, Participating Settlement Class Members who cash their settlement checks release Defendant and its past and present parents, subsidiaries, affiliates and joint ventures and each of their directors, officers, employees, lawyers, and each of their successors and assigns ("Releasees") from all known and unknown claims for overtime compensation, straight time, minimum wages, liquidated damages, penalties and interest and fees/costs under the FLSA and all state/local laws and regulations and common law theories of the states where the Participating Settlement Class Member worked, including the Pennsylvania Wage Payment and Collection Law, arising from the Participating Settlement Class

Member's employment with Defendant as a Clinical Care Reviewer (including Clinical Care Reviewer Seniors) up to the preliminary approval date – December 13, 2019. (Settlement Agreement ¶ 27; *see also* Preliminary Approval Order, ECF No. 119.)  For Participating Settlement Class Members who do not cash their checks, FLSA Opt-In Plaintiffs will be bound by the full release and Rule 23 Settlement Class Members will be bound only by the state law release.  (Settlement Agreement ¶ 28.)

Two notices of the Settlement were distributed:  one to the FLSA Opt-In Plaintiffs in the *Wood* case and to the *Hepp* Plaintiffs (the "FLSA Notice") and a second to Rule 23 Settlement Class Members (the "Rule 23 Notice").  (See Settlement Agreement ¶¶ 39-41; *see also* ECF Nos. 118-4 and 118-5.)  In addition to information about the size of the common fund and a description of how individual allocation amounts would be calculated, the notices included a statement that Class Counsel would seek $1,416,666.66[5] in fees and costs of up to $65,000.  (*See* ECF Nos. 118-4 and 118-5.)  The notices also provided instructions for how to raise timely objections to the Settlement.  (*Id.*)  The FLSA Notice and the Rule 23 Notice informed Rule 23 Settlement Class Members that they will opt into the litigation and release their FLSA claims when they negotiate their settlement checks.  (Settlement Agreement ¶ 28.)  The back of the settlement checks will reiterate this information.  (*Id.*)

The Settlement Administrator issued notice to the FLSA Collective and the Rule 23 Settlement Class – 345 individuals in total – by email and U.S. Mail.  (ECF 119; see also Srey Final Approval Decl. ¶ 6; Srey Attorneys' Fee Decl., ECF No. 121-2, ¶ 3.)  The

---

[5]     As of the date of Plaintiffs' motion for attorneys' fees and costs, Class Counsel had spent approximately 2,369.8 hours prosecuting the claims asserted in the consolidated cases.  (Srey Attorneys' Fee Decl., ECF No. 121-2, ¶¶ 7-8.)

Settlement Administrator updated seven addresses and re-mailed returned notices as needed. The Settlement Administrator also established a toll-free phone number for questions related to the Settlement. (*Id.* ¶ 6.) Two additional individuals contacted the Settlement Administrator to ask if they were eligible to participate in the Settlement and the parties agreed to include them in the distribution of *pro rata* settlement amounts from the contingency fund in exchange for releases of their claims. (*Id.* ¶ 7.) The deadline to opt-out or object to the Settlement was March 7, 2020. (*Id.* ¶ 6.) No requests for exclusion or objections (including objections to the requested award of attorneys' fees, costs or service awards) were submitted. (*Id.* ¶ 7.)

## II

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. Fed. R. Civ. P. 23(e)(2). Approval is appropriate "only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* The Court must (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e). *See In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

## A

The Settlement Class must meet Rule 23(a)'s requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate" and "effectively limit[s] the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 349 (2011) (citation omitted).  Because the numerosity requirement is generally met if the potential number of plaintiffs exceeds 40, the 247 Rule 23 Settlement Class Members are sufficiently numerous under Rule 23(a).  *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).  The commonality bar "is not a high one." *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).  A single common issue is enough to satisfy the commonality requirement.  *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Typicality requires the Court to assess "whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented." *Id.* at 57.  Here, the core issue is whether Defendant misclassified Participating Settlement Class Members as overtime-exempt.  Named Plaintiffs' claims arise from the same practice that gives rise to the Participating Settlement Class Members' claims.  The commonality and typicality requirements are met.  The final factor – whether "the representative parties will fairly and adequately protect the interests of the class" – is also met.  Fed. R. Civ. P. 23(a)(4).  On the record before the Court, the Named Plaintiffs' interests are not antagonistic to those of other Participating Settlement Class Members and Class Counsel are qualified, experienced and capable of litigating the Class's claims.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004).

B

The Settlement Class also "must satisfy at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345.  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). "[T]the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 263 (E.D. Pa. 2012) (citing *Sullivan, Inc.*, 667 F.3d at 297). The predominance requirement is met where the Participating Settlement Class Members were all harmed by Defendant's misclassification of Clinical Care Reviewers and Clinical Care Reviewers Senior as overtime-exempt.

Superiority requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) (citation omitted). Rule 23(b)(3) directs the Court to consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . .[6]

Fed. R. Civ. P. 23(b)(3). All of these factors are satisfied. There are no evident interests in favor of requiring individual control. Also, settlement on a class-wide basis reduces the costs Participating Settlement Class Members would otherwise incur to resolve

---

[6] In the class action settlement context, the Court "need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

their claims and provides them with more prompt compensation for their unpaid overtime.

Because all the relevant Rule 23(a) and (b) factors are met, the Pennsylvania Settlement Class and Iowa Settlement Class are certified for purposes of settlement approval.

C

"A court must determine that notice was appropriate before evaluating the merits of the settlement itself." *In re Am. Investors Life Ins. Co.*, 263 F.R.D. at 237 (citation omitted). Notice must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* The Settlement Administrator distributed Court-approved notice forms including the required information to Participating Settlement Class Members by email and U.S. Mail as described above and ensured that returned notices were re-mailed as needed. Class Counsel received and recorded address updates and fielded questions about the settlement. (Srey Final Approval Decl. ¶ 7.) Plaintiffs have complied with Rule 23's notice provisions.

D

"[A] class action cannot be settled without the approval of the court and a

determination that the proposed settlement is 'fair, reasonable and adequate.'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 282, 316 (3d Cir. 1998) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* Fed. R. Civ. P. 23(e).  Rule 23(e)(2) directs the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[7]

Fed. R. Civ. P. 23(e)(2).

Class Counsel and the Named Plaintiffs adequately represented the class.  With assistance from Wood and the other Named Plaintiffs as is further described above, Class Counsel were able to "develop enough information about the [litigation] to appreciate sufficiently the value of the claims."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016).  The parties engaged in extensive discovery, including the depositions of a corporate Rule 30(b)(6) witness, several high-level managers and multiple Named Plaintiffs; interviews with other members of the class; and the review of numerous documents produced by Defendant.  Class Counsel and the

---

[7]     These factors are like the *Girsh* factors previously applied to decide whether a class action settlement is fair and reasonable in the Third Circuit.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975.); *see also Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *2 n.1 (E.D. Pa. Aug. 23, 2019) ("The Girsh factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the discussion in Girsh substantially overlaps with the factors identified in Rule 23.")

Named Plaintiffs were able to evaluate the strengths and weaknesses of Plaintiffs' claims before reaching an agreement with respect to the terms of settlement.

The Settlement Agreement was negotiated at arm's length.  It is the product of extensive negotiations with experienced counsel on both sides.  The parties engaged in two mediation sessions with a respected wage and hour mediator before reaching their agreement.  "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3. 2016)

The relief that the Settlement is expected to provide to Participating Settlement Class Members is adequate when balanced against the cost and risk involved in pursuing a litigated outcome.  *See* Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018).  Considering the costs and risks of continued litigation, the relief the Settlement Agreement provides is substantial.  Had an agreement not been reached, Defendant would have opposed Plaintiff's motion for Rule 23 certification of the Pennsylvania and Iowa State Law Classes and would have filed a motion to decertify the FLSA Collective (it previously contested conditional certification).  (*See* ECF No. 32.)  In addition, the parties anticipated filing competing summary judgment motions.  Continuing the litigation would have resulted in costly and lengthy proceedings with the prospect of a possible appeal, significantly delaying any relief to Participating Settlement Class Members.  And relief to Participating Settlement Class Members absent the Settlement was not guaranteed.  During discovery, Defendant produced information claiming that it relied on attorney advice when it classified Clinical Care Reviewers as exempt,

raising questions as to whether Defendant's misclassification was willful or in good faith.  (*See* Pls.' Mem. at 14.)  In addition, for mediation purposes, Defendant produced records of computer login data that it alleged showed Plaintiffs worked less overtime hours than they had claimed.  (*Id.*)  The Settlement Agreement, which provides Participating Settlement Class Members with an average settlement amount of $12,248.84 or $131.47 per eligible workweek before deducting fees and costs, provides adequate relief when considering the risk that Plaintiffs might not prevail if the litigation were to proceed.

The Settlement Agreement also provides for an effective method of distributing relief to the Settlement class.  In considering this factor, the Court "scrutinize[s] the method of [notice] processing" and "should be alert to whether the . . . process is unduly demanding."  Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018.)  Participating Settlement Class Members (and FLSA Opt-In Plaintiffs), who all received notice of the proposed Settlement from the Settlement Administrator (Srey Final Approval Decl. ¶ 7), are not required to file claims.  Unless a Participating Settlement Class Member explicitly requested to be excluded, and none did, they will be mailed a check.  (*See* ECF Nos. 118-4 and 118-5.)  That no one has "objected to, or sought exclusion from, the proposed settlement [ ] strongly supports the approval of the settlement."  *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 494 (E.D. Pa. 2018).

Likewise, no one objected to the requested award of attorneys' fees and costs after receiving notice of the request and the amounts requested in the notice distributed to the class.  As is further set forth below, the proposed attorneys' fees award is reasonable.

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." The Settlement Agreement is the only agreement in play in this litigation, and Plaintiffs have satisfied this requirement.

Finally, Rule 23 aims to prevent the "inequitable treatment of some class members *vis-à-vis* others." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). All Participating Settlement Class Members are assumed to have worked an average of 48 hours per week. Any differences between the amounts they will receive are due to the number of eligible weeks worked as a Clinical Care Reviewer or Clinical Care Reviewer Senior during the applicable statutory period, annual base salary data and their available remedies under the FLSA and/or relevant state law. Using this information, Plaintiff's counsel calculated the *pro rata* percentage of the Net Allocation Fund for each Participating Settlement Class Member. The Settlement Agreement treats them equitably.

Because all the necessary Rule 23 factors are met, the Court finally approves the Settlement of Plaintiffs' Pennsylvania and Iowa state law claims.

III

A

The standard to be applied on final certification of a FLSA collective "is whether the proposed collective plaintiffs are 'similarly situated.'" *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (citing 29 U.S.C. § 216(b)). Factors which the Court should consider include, but are not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and

whether they have similar salaries and circumstances of employment." *Id.*

No one has opposed final certification of Plaintiffs' FLSA collective. All its members advance the same claims – that they were misclassified as overtime-exempt and not paid for overtime. They were all Clinical Care Reviewers and Clinical Care Reviewer Seniors for Defendant with similar employment circumstances. The FLSA Collective is certified for purposes of approving the Settlement.

### B

When evaluating the settlement of a FLSA collective action, the Court must determine whether it is a "fair and reasonable resolution of a bona fide dispute." *Adams v. Bayview Asset Mgmt., LLC,* 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014) (citations omitted). The FLSA Collective members challenge Defendant's decision to classify them as overtime-exempt. Defendant specifically denies owing any wages to Plaintiffs under FLSA or under state laws and has consistently asserted that Plaintiffs are not entitled to overtime regardless of the number of hours they worked. The Settlement Agreement clearly reflects a compromise over issues that are actually disputed. *See Potoski v. Wyo. Valley Health Care Sys.* No. 11-582, 2020 WL 207061, at *3 (MD. Pa. Jan. 14, 2020) (finding a similar dispute was "bona fide"). The compromise of their dispute is fair and reasonable for the same reasons that the settlement of the class claims is appropriate under Rule 23.

The Court finally approves the Settlement of Plaintiffs' FLSA claims.

### IV

The Settlement Agreement authorizes Class Counsel to seek an attorneys' fee award of up to one-third of the $4,250,000 gross settlement amount, which is what they

seek here: $1,416,666.66. (Settlement Agreement ¶ 29.) "In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Two calculation methods may be used to determine whether a requested award of fees is reasonable in a class action or in a collective action: the lodestar method and the percentage-of-recovery method. *See Galt*, 310 F. Supp. 3d at 497 (citing *In re Gen Motors Corp. Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 820-21 (3d Cir. 1995)). The lodestar method "uses the number of hours reasonably expended" to determine "an adequate fee irrespective of the monetary value of the final relief achieved for the class." *In re Gen. Motors*, 55 F.3d at 821. The percentage of recovery method "calculates the percentage of the total recovery that the proposal would allocate to attorney[']s fees by dividing the amount of the requested fee by the total amount paid out by the defendant[.]" *Galt*, 310 F. Supp 3d at 497 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001) (internal quotations omitted).)

The percentage-of-recovery method is generally favored in common fund cases and wage and hour cases in the Third Circuit and the Court applies it here. *See In re Prudential*, 148 F.3d at 333; *Galt*, 310 F. Supp. 3d at 497 (citation omitted). Factors to consider when determining whether an attorneys' fee award is appropriate using the percentage-of-recovery method include: (1) the size of the fund and the number of persons who will benefit; (2) the presence or absence of objections to the settlement terms and/or fees requested; (3) the skill and efficiency of the attorneys involved; (4) the complexity of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted by counsel; and (7) awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223

F.3d 190, 195 n.1 (3d Cir. 2000). These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id.* District courts must "engage in robust assessments of the fee award reasonableness factors when evaluating a fee request." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302 (3d Cir. 2005). Applied here, the factors weigh in favor of granting Class Counsel's requested fee.

345 people will benefit from the Settlement and, after deduction of Plaintiffs' request for a fee of one-third, costs, service payments, the contingency fund and Settlement Administrator fees, will receive an average allocation of $7,870.75. (Srey Attorneys' Fee Decl. ¶ 4.) The Settlement confers a significant benefit on the Participating Settlement Class Members and the first factor favors approval.

The second factor favors approval because no one objected to the Settlement Agreement after dissemination of the Court-approved Notice of the Settlement to the 345 individuals in the FLSA collective and the Rule 23 Settlement Class and the telephonic final approval hearing on April 2, 2020. (*See* Srey Attorneys' Fee Decl. ¶ 3.)

The third factor also favors approval. The attorneys who negotiated the Settlement Agreement have substantial experience in class action and collective action litigation and have demonstrated their skill to the Court's satisfaction.

The fourth factor –the complexity and duration of the litigation – weighs in favor of the requested award of fees. This litigation began August 2017. Plaintiffs' counsel investigated claims, filed the *Wood* Complaint and Amended Compaint and the *Hepp* Complaint; drafted and responded to multiple motions; requested, reviewed and responded to written discovery; took and defended multiple depositions; interviewed

potential class members regarding their individual work experiences as Clinical Care Reviewers; and constructed individual damages models. (*Id.* ¶ 7.) Absent settlement, more time certainly would be required for the parties to prepare for trial. The parties have confronted complex issues including: whether Plaintiffs could proceed as a conditionally certified FLSA collective; whether Plaintiffs could meet the requirements for Rule 23 class certification for their state law claims; and whether Defendant could prove that Plaintiffs and similarly situated individuals were exempt employees under FLSA's "white collar" exemptions. Plaintiffs also created models to calculate individual damages based on data produced by Defendants regarding individual employees.

The fifth factor – risk of nonpayment – also supports the requested fee award. To reach the Settlement Agreement, the parties engaged in two mediation sessions with a private mediator well versed in wage and hour matters, first unsuccessfully on November 12, 2018 and then again on September 27, 2019. (Srey Preliminary Approval Decl. ¶ 5.) Class Counsel, whose fee is contingent on a favorable outcome (Srey Attorneys' Fee Decl. ¶ 5), have prosecuted this complex case without any guarantee of payment. *See O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003). ("Any contingency fee [arrangement] includes a risk of no payment.")

The amount of time spent by counsel, the sixth factor, also supports approval. When Plaintiffs filed their motion for attorneys' fees, Class Counsel had spent approximately 2,369.8 hours prosecuting the claims asserted. (Srey Attorneys' Fee Decl. ¶¶ 6-7.) Their time was reasonably spent to prepare for this litigation and weighs in favor of the requested fee award.

Awards in similar cases also support approval of Plaintiffs' attorneys' fees

request. In common fund cases, fee awards generally range from 19% to 45% of the settlement fund. *See Galt*, 310 F. Supp. 3d at 498. The percentage requested here is in line with fee awards in other wage and hour cases with common fund settlements. *See Id.* at 497 (approving an award of 35% of $520,000 settlement fund); *Hall v. Accolade, Inc.*, No. 17-3423, 2020 WL 1477688, at *10-12 (E.D. Pa. Mar. 25, 2020) (approving an award of 31.3% of the $1,095,826.05 settlement fund); *Devlin v. Ferrandon & Son, Inc.*, No. 15-4976, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) (award of 1/3 of the $1,550,000 settlement fund).

The Third Circuit has "suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method." *Gunter*, 223 F.3d at 195 n.1. A lodestar award "is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys" *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216 (E.D. Pa. 2011) (internal quotation omitted). "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid*, 396 F.3d at 306-07 (footnote omitted) (citing *In re Prudential*, 148 F.3d at 342).

Fees calculated under the lodestar method in this case total $747,150. (Srey Attorneys' Fee Decl. ¶ 8.) Class Counsel's declaration breaks down 2,369.80 total hours spent on this litigation by eight attorneys and litigation support staff.[8] The attorneys'

---

[8] This number does not include any of the work that has occurred since the filing of the motion for attorneys' fees, including the final fairness hearing.

billable rates ranged from $600 to $300 per hour and litigation support staff billed at a rate of $175 per hour. (*Id.*) The attorneys' fee request of $1,416,666.66 represents a multiplier of 1.89 times the lodestar.

The Third Circuit has recognized that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential*, 148 F.3d at 341; *Arrington v. Optimum Healthcare IT, LLC.*, No. 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018) (approving fees with a lodestar multiplier of 5.3 in a wage and hour case even though the "lodestar multiplier is certainly on the higher end of the range of reasonable multipliers"); *Acevedo v. Brightview Landscapes, LLC*, No. 13-2529, 2017 WL 4354809, at *20 (M.D. Pa. Oct. 2, 2017) (approving a 31.6667 percent percentage-of-recovery rate for attorneys' fees where the lodestar multiplier was 1.3). Given the facts of this case and the absence of objections to the requested fees, a lodestar multiplier of 1.89 is acceptable and does not require the Court to reduce the requested fees.

V

Class Counsel requests reimbursement for $61,901.53 in litigation costs, less than the $65,000 permitted pursuant to the Settlement Agreement. (Srey Attorneys' Fee Decl. ¶¶ 11-12; *see also* Settlement Agreement ¶ 30.) "In a certified class action, the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014) (citation omitted). Class Counsel

incurred costs including court costs, postage, travel and lodging, transcript fees, legal research and, most significantly, $20,250 for two mediation sessions, the second of which resulted in the successful resolution of this litigation. (Srey Attorneys' Fee Decl. ¶ 11.) No objections have been received regarding the requested reimbursement of costs from the settlement fund and the expenses incurred are reasonable given the litigation's complexity and duration. The Court grants the request for costs.

VI

The requested service payments are reasonable. Approving contribution or incentive awards is common, especially when the Settlement establishes a common fund. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011). "The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Id.* The requested service payments, which range from $5,000 for the original Named Plaintiff Ann Wood down to $300 for opt in-plaintiffs who participated in written discovery but did not sit for depositions, are proportional to the recipients' varying contributions to the litigation. Further, the amounts requested are consistent with service payments awarded in similar cases in the Third Circuit. *See, e.g. Arrington*, 2018 WL 5631625, at *9 (approving a $7,500 service award to each of the four named plaintiffs in a FLSA collective with a gross settlement amount of $4,900,000); *Williams v. Sweet Home Healthcare, LLC*, No. CV 16-2353, 2018 WL 5885453, at *7 (E.D. Pa. Nov. 9, 2018) (approving $6,000 incentive payments to two class representatives in

FLSA and PMWA litigation with a maximum settlement amount of $1,625,000).  The

Court awards the requested service payments.

An appropriate Order follows.

BY THE COURT:

_**/s/ Gerald J. Pappert**_
GERALD J. PAPPERT, J.
